In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00107-CV
_____

KEVIN GEHEB, Appellant

V.

TRANSCANADA KEYSTONE PIPELINE, LP, Appellee

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-198,034

**MEMORANDUM OPINION**

Appellant, Kevin Geheb, appeals from a judgment the trial court rendered based on TransCanada Keystone Pipeline, LP's motion for summary judgment, which is based, in part, on Keystone's affirmative defense of release. Because the scope of the release that Geheb signed includes all the claims on which Geheb's suit relies, we affirm.

1

## Background

In 2008, Geheb leased a tract of land from Michael Gaus, where Geheb operated a farm. In 2010, Gaus sold Keystone an easement, which allowed Keystone to build an underground pipeline across Geheb's farm. When the construction project reached Geheb's farm in 2012, Geheb signed a release, in return for money, that released Keystone from any damages that Keystone caused to Geheb's 2012 crop. The 2012 Release, however, did not include damages that Geheb might suffer after 2012.

When Keystone failed to complete its work on its pipeline across Geheb's farm by year-end 2012, Geheb and Keystone mutually agreed to the terms memorialized in a second release, the 2013 Release. Unlike the 2012 Release, the 2013 Release is broader in its scope, as it contains no language limiting the scope of the release to Geheb's 2013 crop. The release clause that is in the 2013 Release provides, in pertinent part:

> Further, Owner,[1] on behalf of [himself/themselves], and any other person or entity claiming by or through [him/them] hereby waive(s) and release(s) and agree(s) to save, defend, hold harmless and indemnify Keystone . . . from and against any and all claims, causes of action, suits, debts, expenses, general damages, interest, costs and demands whatsoever, at law and in equity, against Keystone, or any person or entity related to Keystone, which arise out of, are connected

---

[1] The 2013 Release contains language indicating that, as used in the release, the term *Owner* referred to Geheb.

with, or relate in any way to Keystone's acquisition of, or Owner's conveyance of, the Easement or Keystone's proper exercise of its timber rights granted under the Easement, including but not limited to, any and all tree, crop, plant, timber, harvest or yield loss damages, diminution of the value of the Property, or any other reasonably foreseeable damages.

In December 2013, Gaus terminated Geheb's lease for nonpayment of rent. Approximately one year later, Geheb sued Keystone for damages, which he alleged were related to Keystone's failure to restore the surface on his farm to the condition it was in prior to the date that Keystone built a pipeline across his farm. According to Geheb's petition, Keystone's failure to properly restore the surface of his farm to its prior condition made it impossible for him to farm the tract. Geheb's petition includes five theories of recovery: (1) inverse condemnation; (2) breach of agreement; (3) tortious interference with his lease; (4) negligence; and (5) various additional theories sounding in fraud.

When Keystone responded to Geheb's suit, it filed a combined traditional and no-evidence motion for summary judgment. In the traditional section of its motion, Keystone asserted that Geheb had released it from all the claims that he was asserting in his petition. In the no-evidence section of its motion, Keystone claimed that Geheb could not prove the elements that he would be required to prove to establish that any of his claims had merit.

Following a hearing on Keystone's combined motion, the trial court issued a judgment dismissing each of Geheb's claims. The judgment, however, fails to specify the grounds on which the trial court decided to grant Keystone's motion. On appeal, Geheb argues, among other claims, that the 2013 Release did not cover the claims he filed in his suit. According to Geheb, he did not release Keystone from claims that are related to Keystone's failure to restore the surface of his farm to the condition it was in before Keystone constructed the pipeline. With respect to the trial court's no-evidence rulings, Geheb also argues that the trial court should have allowed him more time to pursue discovery before ruling on Keystone's motion.

Standard of Review

To prevail on its affirmative defense of release, Keystone was required to conclusively establish that the release applied to Geheb's claims. *See* Tex. R. Civ. P. 166a(c); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). We review rulings on motions for summary judgment using a *de novo* standard. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the trial court in this case failed to specify the grounds on which it ruled on Keystone's combined motion for summary judgment, we presume the trial court granted the motion on all the grounds that Keystone advanced in its motion. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). Thus, if any one of the grounds

on which Keystone moved for summary judgment has merit, we must affirm the trial court's ruling on Keystone's motion. *Id.*

In this case, Keystone's motion alleged that Geheb's claims fell "squarely within the express language of the 2013 Release." If Keystone's interpretation of the language in the 2013 Release is correct, its defense of release would be dispositive of the appeal. So, before addressing Geheb's arguments about the ruling the trial court made on the no-evidence section of Keystone's combined motion, we address whether the 2013 Release included the claims on which the suit was based.

Analysis

Before we address the proper scope of the 2013 Release, we note that the parties do not dispute several facts, including that Geheb signed the 2013 Release, and that Geheb received the consideration recited in the release. Also, Geheb has not claimed that the language in the release is ambiguous or that his signature was acquired by fraud. For the reasons explained below, we construe the release clause as sufficiently broad to include the claims on which Geheb based his suit for two reasons. First, the *which* clause that follows the broad language the parties used when describing the scope of the intended release is a nonrestrictive clause that does not narrow the release's scope. Second, even if the parties intended the *which* clause to be used in a restrictive sense, Geheb's claims fall within the scope of the *which*

5

clause because Keystone's failure to restore the surface of Geheb's farm *relates* in some manner to Keystone's acquisition of the easement.

During the proceedings in the trial court, Geheb argued that the scope of the 2013 Release was limited to "a portion of Geheb's 2013 rice crop which Geheb could not plant due to pipeline construction[,]" that he did not release any claim for recovering restoration costs on the farm, and that he did not release any claim related to the losses he suffered beginning in 2014 and thereafter because he could no longer farm the tract. Geheb expands upon those arguments in his appellate brief, suggesting for the first time that the scope of the 2013 Release is limited to "*damages attributable to or arising from* [Keystone's] *proper use of its rights granted pursuant to that certain Permanent Easement*[.]" (emphasis in Geheb's brief).

In determining the proper scope of the 2013 Release, our task is to ascertain the true intentions of the parties, as the parties expressed their intent in the four corners of their release. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). When construing the release, we give its terms "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

In arguing that the scope of the release did not include claims arising from Keystone's failure to restore the surface of the farm, Geheb ignores the release clause and focuses on the sentence that precedes it. But the sentence preceding the language describing the scope of the release is not the only sentence in the release that defines its scope. The sentence Geheb focuses in his argument provides, in pertinent part:

> For and in consideration of [an amount certain paid by Keystone], receipt of which is hereby acknowledged, **Kevin Geheb, Tenant**, whose address is [address] ("**Owner**"), does hereby acknowledge receipt of payment in full and in advance for all tree, crop, plant, timber, harvest or yield loss damages, diminution of the value of the Property (if any), and/or any other reasonably foreseeable damages attributable to or arising from Keystone's proper exercise of its rights granted pursuant to that [Easement granted to Keystone by Gaus.][2]

Geheb's arguments suggest that the *proper exercise of its rights* provision in the above quoted sentence limits the scope of the release to Keystone's operations because they were, according to the argument he makes, inconsistent with the easement that Keystone acquired from Gaus. According to Geheb, the easement Keystone acquired from Gaus required Keystone to return the surface of Geheb's farm to the condition that it was in before Keystone built the pipeline across his farm.

Nevertheless, the easement that Gaus granted to Keystone necessarily anticipated that Keystone would be disturbing the soil in building the pipeline across

---

[2] Emphasis, as used by the parties, in their 2013 Release.

the property that Gaus owns. And, even if we were to agree that Keystone's obligation to restore the surface of the farm is a right that Geheb could enforce, a matter we need not decide, Keystone argues that Geheb released all claims that are at issue in this appeal.

We note that the release clause found in the 2013 Release broadly applies to "any and all claims, causes of action, suits, debts, expenses, general damages, interest, costs and demands whatsoever, at law and in equity[.]" Where we have ended the clause just quoted with a period, the parties completed the sentence containing language of the release with a nonrestrictive clause, punctuated with a comma and starting with the word *which*. In construing the meaning the parties intended for the *which* clause that is found in the 2013 Release, we must give the terms the parties used in the instrument their plain meaning, and we have harmonized any conflicts between the various sentences in the release so that none are rendered meaningless. *See Italian Cowboy Partners*, 341 S.W.3d at 333.

Generally, clauses that begin with *which* are given a nonrestrictive meaning. *See* NEW OXFORD AMERICAN DICTIONARY 1968 (3d ed. 2010) (stating that when using the term *which*, in the United States, should "be employed only for nonrestrictive (or nonessential) clauses[,]" in contrast to a clause that begins with the word *that*, a restrictive clause that "identifies a particular thing"); Bryan A.

Garner, GARNER'S MODERN AMERICAN USAGE 806 (3d ed. 2009) ("A restrictive clause is essential to the grammatical and logical completeness of a sentence. A nonrestrictive clause, by contrast, is so loosely connected with the essential meaning of the sentence that it could be omitted without changing the meaning."). Giving the *which* clause a meaning that does not restrict the scope of the dominant clause, we conclude the release included each of the claims that are at issue in the appeal.

Moreover, even if the parties intended the *which* clause to have a restrictive meaning, the requirements of the restrictions were established if Keystone's summary judgment evidence shows that Geheb's claims arose out of, are connected with, or relate in any way to Keystone's acquisition of or Owner's conveyance of, the Easement **or** Keystone's proper exercise of its right granted under the Easement." Thus, even if the *which* clause restricts in some manner the broader meaning of the dominant clause, the summary judgment evidence conclusively established that the conditional requirements of the restrictions were still met. Based on our conclusion that the summary judgment evidence conclusively proved that each of Geheb's claims related in some way to Keystone's acquisition of the easement, we hold the trial court did not err by granting Keystone's motion for summary judgment.

Conclusion

We hold that Geheb released the claims that are at issue in the appeal. Because Geheb released his claims, we need not address his remaining arguments as they challenge rulings made by the trial court that are not necessary to our disposition of his appeal. *See* Tex. R. App. P. 47.1.

Accordingly, the trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 27, 2018
Opinion Delivered October 4, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.